STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-1649

IN RE: INTERDICTION OF AMY HALL

\*\*\*\*\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, DOCKET NO. 40955
HONORABLE JUDGE LEO BOOTH, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*
SYLVIA R. COOKS
JUDGE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and James T. Genovese, Judges.

Genovese, J., dissents and assigns written reasons.

AFFIRMED.

Jack H. McLemore, Jr.
P.O. Box 520
200 Advocate Row, Suite B
Vidalia, LA 71373
(318) 336-9189
COUNSEL FOR APPELLEE:
    Ronald Hall

William F. Coco
State of Louisiana, Department of Heath and Hospitals
Office for Citizens with Developmental Disabilities
5604 Coliseum Blvd., Suite B
Alexandria, LA 71303
(318) 487-5262, Ext. 251
COUNSEL FOR APPELLANT:
    State of Louisiana, Department of Health and Hospitals

**COOKS, Judge.**

## STATEMENT OF THE CASE

The State of Louisiana, Department of Health and Hospitals, Office for Citizens with Developmental Disabilities (State), appeals a September 28, 2006 district court Order retaining Amy Hall in the Pinecrest Developmental Center in Pineville, Louisiana. For the reasons assigned below, we affirm the Order.

## STATEMENT OF THE FACTS

The facts in this case are not in dispute. Amy Hall, age 28, has an extensive history of behavioral and psychiatric difficulties which manifested in her teenage years. The following assessment is from the State's own evaluation:

> This evaluation documents that Ms. Hall has a veritable plethora of psychiatric diagnoses, including Intermittent Explosive Disorder, Bipolar Disorder, Impulse Control Disorder, Oppositional Defiant Disorder, Borderline Personality Disorder, and Depressive Disorder, NOS. Ms. Hall has an extensive history of psychiatric difficulties, exhibiting the following behaviors: self-injury, verbal and physical aggression, property destruction, false allegations, screaming, spitting, exposing herself in public, public masturbation, and reports of suicidal ideation. These behavioral problems have resulted in numerous psychiatric hospitalizations and failed placements. Ms. Hall has been treated with numerous psychotropic medications (including, but not limited to, Zyprexia, Depakote, Paxil, Carbomazapine, Zoloft, Seroquel, Topomax, Lexapro, Lithium, Abilify and Trileptal); however, the record does not support a conclusion that any of these medications have been successful in controlling Ms. Hall's aberrant behavior.

Amy's behavior problems have resulted in several psychiatric hospitalizations and placement in the following medical and psychiatric institutions: Crossroads in Alexandria, Rivernorth in Pineville, East Lake in New Orleans, Plantation Mental Health, Allen Parish Recovery Hospital, Robertson Road Community Home, Polk Community Homes, Coutee and Coutee, Phoenix Personal Care Services, A Home Away From Home, Franklin County Community Homes, and Westside Habilitation Center. She was placed in the Concordia Parish prison facility for her safety and the

safety of others prior to her commitment in Pinecrest Developmental Center.

Throughout her life, the tremendous burden for Amy's care and medical treatment fell to her parents, Reverend and Mrs. Ronald Hall. After years of struggling with Amy's condition, failed treatment in private facilities and numerous medical evaluations, which confirmed that her condition was "persistent" and would only "progressively worsen," the Halls sought help through the district court.

On November 29, 2005, they filed a petition asking that Amy be "fully interdicted and be placed in protective care, because of the sometimes violent tendencies" she exhibits. An attorney was appointed to represent Amy and she was examined by Dr. Edwin Urbi, M.D and Dr. Jay Bamburg, Ph.D. A hearing was held on the petition and the reports of Dr. Urbi and Dr. Bamburg were filed in the record.

Dr. Urbi found Amy is extremely unpredictable, "gets agitated easily, [has] very limited insight, [and] impaired judgment." He diagnosed intermittent explosive disorder and mental retardation. Her prognosis was "extremely poor" and he found she is "*at high risk of hurting self and others*." Dr. Bamburg diagnosed Amy as suffering from Borderline Personality Disorder and determined her prognosis was "guarded at best secondary to her psychiatric condition." He determined her personality disorder "is not subject to remission through therapy/medication, and will greatly impact Ms. Hall's ability to make sound, safe life decisions."

Reverend Hall testified at the hearing. He explained the circumstances which led to the decision to interdict and commit his daughter.

> Of course, our daughter, we kept her at home until she was between the years of 16 and 17. She was in the public school system here in Concordia Parish and it was recommended prior to us actually having her go into a home that we should do it. We were very reluctant, it being our daughter. But at a point she got to where we could not physically handle her and she got aggressive toward her mother and I both, physically. Destructive of our property. And we felt like she was – my wife was afraid. She had physically attacked my wife on different

3

occasions. She has got some problems as of yet on account of it. We just got to where we could not handle her at home. So between the years of 16 and 17 she went into her first facility, which was Catahoula Caring. She made some threats against us physically. In fact, she had threatened us bodily injury and harm. And at one point before she went off, my wife did find a knife that she had hidden in her bedroom and she had made some threats relative to that. We just took it as threats, but then my wife found the knife that she had hidden and it really terrified both of us that there could be some harm done. We just concluded that we just didn't have any other recourse.

Reverend Hall testified Amy has been at numerous facilities but "each time they called and told us we would have to come get her because of her violence. And we would just have to go get her because they turned her out on account of this." At one point, the Halls called the Sheriff's department because "she had physically attacked" Reverend Hall and "had done damage to my wife's automobile. She had done some damage there at our residence." Her father testified committing Amy to a State treatment facility was a solution of last resort because it was "repulsive . . . because she was ours."

Mrs. Larose Hall, Amy's mother, testified that she was afraid of being alone with Amy because "she has physically abused me. She has taken me – she has grabbed me by the hair of the head and then slung me around when she gets in these spells. I wouldn't fight back because that was my daughter. But when she would grab my hand – she almost broke my thumb. She would just be physically abusive."[1]

The testimony presented by Reverend and Mrs. Hall, Amy's extensive medical history and the reports of Dr. Urbi and Dr. Bamburg, clearly indicate Amy is suffering from mental illness which causes her to be a danger to herself and others. *See* La.R.S. 28:54(A). Following the hearing, a judgment was signed on April 20, 2006, interdicting Amy. At the time of the judgment, Amy was already in the care and

---

[1] Mrs. Hall has since died of pancreatic cancer, leaving Reverend Hall alone to handle this matter.

custody of the State at the Pinecrest Developmental Center in Pineville.

Sixty days after rendition of the judgment, the agency director at the Pinecrest Developmental Center determined Amy did not meet the requirements for the Mental Retardation/Developmentally Disabled program, under La.R.S. 28:451.1. Despite her history of violent, psychotic behavior and limited mental capacity, the State found Amy did not meet the legal definition of "developmentally disabled" because she is "able to read and write" and made the decision to release her from State custody. Amy's parents appealed the decision to release her from State custody to an administrative law judge.[2] The director's limited assessment of Amy's eligibility under La.R.S. 28:451.1 was reviewed by an administrative law judge. The administrative law judge concurred in the finding that Amy did not meet the legal definition of "developmentally disabled," but recommended the following:

> While the appellant does not qualify for services in the MR/DD system, as determined by the Region 6 OCDD, the undersigned Administrative Law Judge concurs with all 5 recommendations of Dr. Bamburg in his psychological evaluation. Specifically, the appellant needs services designed for mental illness, rather than services designed for mental retardation/developmental disability. The appellant needs aggressive psychiatric monitoring to appropriately address her continuing behavioral problems. (Emphasis added).

Pinecrest did not address the administrative law judge's recommendation regarding Amy's need for services designed for mental illness or her need for aggressive psychiatric monitoring, nor did the director attempt to locate a State facility which would be better equipped to render medical services tailored to Amy's condition. Instead, in July 2006, Pinecrest notified Reverend and Mrs. Hall that Amy would have to be released from the State facility and brought home because she did not meet the requirements of the Mental Retardation/Developmentally Disabled

---

[2] At this point, Amy had been interdicted and her father, Reverend Hall, was named as curator. The Halls assert they were not represented by counsel at the administrative hearing.

program. In desperation, the Halls returned to district court. On September 28, 2006, the district court signed an Order maintaining Amy in the custody of the State and ordered her continued placement at Pinecrest for observation, evaluation and placement. The State now appeals, asserting the district court erred in signing an Ex Parte Order which did not allow the State an opportunity for a hearing. The State also contends under the Administrative Procedure Act, La. R.S. 49:950, any review of its determination of eligibility is limited in scope. We disagree with the State's position.

## LAW AND DISCUSSION

In determining its obligation to retain custody of Amy, the State directs our attention to the Louisiana Developmental Disability Law, La.R.S. 28:451.1. This statute establishes an office for citizens with developmental disabilities and is intended to provide services to allow individuals with "developmental disabilities to exert control and choice over their own lives, and fully participate in and contribute to their communities through full integration and inclusion" in society. La.R.S. 28:451.1. Developmental disability is defined as an "intellectual or physical impairment" which results in "substantial functional limitation" in three or more areas of major life activity (self-care, receptive and expressive language, learning, mobility, self-direction, capacity for independent living, and economic self-sufficiency) and is not attributed solely to mental illness. La.R.S. 28:451.2(12). We find this statute inapplicable to a determination of the State's responsibility for the continued custody and medical treatment of Amy. The fact that Amy does not fit the definition of "developmentally disabled" is not relevant to these proceedings.

The irrefutable medical evidence presented at trial, together with the testimony of her parents, establishes that Amy suffers "from serious mental illness which contributes or causes [her] to be dangerous to [herself] or others or to be gravely

disabled." La.R.S. 28:54(D)(1)(a). Amy is currently in the custody of the State following a judicial determination under this statute, and the State is bound by the judgment committing her, involuntarily, to Pinecrest until such time as the director of the State facility, at which she is housed, certifies that it is "medically appropriate" to release her based upon a determination that she no longer represents a threat to herself or society at large or that she can be conditionally released subject to certain terms and conditions. La.R.S. 28:56(C), La.R.S.28:56(G)(1). There was no such certification by the director in this case.

Moreover, the subject of the administrative determination was not germane to the issue of Amy's continued need for placement because of her serious threat to herself and society. The State's mistakenly relied on the administrative law judge's determination that Amy does not meet the legal definition of "developmentally disabled," as its justification for her release from the custody of the State. The administrative law judge did not recommend that Amy's be released from the custody of the State. In fact, the administrative law judge recommended Amy receive "services designed for mental illness" and that she be aggressively monitored "to appropriately address her continuing behavioral problems." There was no need for the Halls to appeal the administrative law judge's determination of Amy's ineligibility for services under the Mental Retardation statute. When the facility notified the Halls of its intent to release Amy, the Halls went back to the district court. The district court ordered that Amy be retained at the State facility for "evaluation and placement." We find the trial court's decision to issue the Order in September 2006 for the continued commitment of Amy was appropriate.

This ruling does not leave the State without recourse. It may petition the court and request a hearing to determine Amy's continued need for placement or the State

may exercise its statutory authority to release Amy, but only after the director certifies that she no longer represents a danger to herself or others or that she is capable of safely residing in the custody and care of her father or other caretakers subject to certain specified or special conditions. Additionally, the State may request that Amy be transferred to another State facility better able to treat her condition. Accordingly, we affirm the Order of September 28, 2006 continuing Amy's commitment to Pinecrest Developmental Center.

The Louisiana Mental Health Law, La.R.S. 28:1, *et seq.*, places responsibility on the State to retain custody of individuals who have been adjudicated to be a danger to themselves or others. These statutory provisions were enacted to protect the public from harm and to administer medical treatment to those individuals in dire need of help and confinement. When an individual, suffering from mental illness which causes that person to be a danger to himself or others, "slips through the cracks" and is released to wander freely, the public danger and potential harm can be catastrophic. Louisiana's statutory scheme is designed to provide needed care to the mentally ill and to prevent them from harming themselves or members of the public at large. In this case, the responsibility for Amy's continued commitment and medical treatment rested squarely with the State until such time as a determination is made by the district court or the director of the facility that it is "medically appropriate" to return her to society.

**DECREE**

Based on the foregoing review of the record, we affirm the district court Order of September 28, 2006. All costs of this appeal are assessed against the State of Louisiana, Department of Health and Hospitals.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-1649

IN RE:  INTERDICTION

OF

AMY LAROSE HALL

**GENOVESE, J., dissents and assigns the following reasons.**

This case indeed involves an unfortunate set of facts and circumstances; nevertheless, due process of law is paramount and cannot be excused.  The undisputed facts in the record clearly indicate that the trial court, without a contradictory hearing, signed an ex parte order overruling an administrative law judge's decision in complete disregard and in violation of the Louisiana Administrative Procedures Act as set forth in La.R.S. 49:950, *et seq*.  The majority in this case affirms the trial court's actions, which is tantamount to a circumvention and evisceration of the Louisiana Administrative Procedures Act.  Since the Halls failed to appeal the administrative law judge's decision, that decision is final.  In fact, without any appeal of the administrative law judge's decision, this case should not have even been before the district court.  Consequently, I respectfully dissent from the majority and would vacate the district court order and reinstate the administrative law judge's decision.